Paula Crean sued Michelin North America, Inc., for workers' compensation benefits for on-the-job injuries. Constantly lifting and fixing defective tires while working for Michelin, Crean developed bilateral carpal tunnel syndrome and bilateral *Page 299 
ulnar nerve neuropathy in her hands and wrists. On June 12, 1997, the trial court entered a final judgment in favor of Crean. The trial court found that Crean had suffered a permanent and partial disability to the body as a whole and had suffered an 80% loss of capacity or ability to work. The trial court awarded Crean temporary total disability benefits in the sum of $15,084 and permanent partial disability benefits in the sum of $23,760. Further, the trial court ordered Michelin to pay for Crean's necessary medical and surgical treatment, her rehabilitation, her medicine, and her medical and surgical supplies. On July 11, 1997, Crean filed a motion to alter, amend, or vacate the judgment, or, in the alternative, for a new trial. (The record does not contain this motion.) On August 25, 1997, the trial court denied Crean's postjudgment motion, but awarded her $217 in travel expenses for her medical treatment. (The trial court did not issue a written order, but the court recorded its ruling on the case action summary.)
On October 27, 1997, the trial court amended the final judgment to apportion the compensation award between the two compensation carriers which insured Michelin during the time Crean sustained her injuries. The trial court found that the evidence admitted during Crean's workers' compensation trial proved that, when Crean suffered the injuries to her right hand and wrist, for which she received the most medical treatment, The Hartford Insurance Company was Michelin's compensation carrier and, when Crean suffered the injuries to her left hand and wrist, Cigna Property and Casualty Insurance Company was Michelin's compensation carrier. The trial court apportioned the compensation award as follows:
 "The Hartford should be responsible for the payment of all temporary total disability benefits through February 5, 1995. Therefore, the Plaintiff is to have and recover of The Hartford, the sum of $15,084.00 as compensation due and payable for temporary total disability through February 9, 1995.
 "Of the $23,760.00 awarded as permanent partial disability through March 14, 1997, the Court finds that The Hartford should be responsible for 70% of said sum and Cigna should be responsible for 30% of said sum. The Plaintiff shall have and recover of The Hartford the sum of $16,632.00 for permanent partial disability through March 14, 1997. The Plaintiff shall have and recover of Cigna the sum of $7,128.00 as permanent partial disability through March 14, 1997.
 "The Plaintiff shall have and recover from The Hartford the sum of $220.00 per week as weekly compensation benefits for 109.2 weeks. The Plaintiff shall have and recover from Cigna the sum of $220.00 per week as weekly compensation benefits for 46.8 weeks.
 "The plaintiff shall have and recover of The Hartford, the sum of $233.80 which is 70% of the filing fee of this case of $117.00 and the Plaintiff's mileage to and from the doctor at $217.00. The Plaintiff shall recover from Cigna, the sum of $100.20, which represents 30% of the filing fee and the Plaintiff's mileage."
(R. 7-8.)
On December 11, 1997, pursuant to § 25-5-86, Ala. Code 1975, Crean gave the required five-day notice to Michelin that she intended to move for a modification of the trial court's judgment because she had not yet received any of the benefits awarded by the court. On December 15, 1997, Michelin's attorney sent Crean's attorney a fax stating: "I have all Crean money, call." On December 18, 1997, in response to the fax, Crean's attorney sent Michelin's attorney a letter stating that Crean intended *Page 300 
to file her motion to modify the judgment notwithstanding the fax and that Crean refused to accept the dispute between Michelin's two compensation carriers as good cause for Michelin's delay in payment of her court-ordered benefits. On December 19, 1997, Crean moved the trial court to modify its judgment so as to order Michelin to pay the past due and future compensation installments in a lump sum and to pay interest and a 15% penalty, all pursuant to § 25-5-59(b) and § 25-5-86, Ala. Code 1975, for failing to pay the court-ordered benefits timely. If Michelin opposed this motion, Michelin has not included in the record any material of any kind about such opposition.[1] On January 5, 1998, after hearing the parties, the trial court entered an order reading: "Motion to Modify Judgment denied. Court will allow lump sum settlement."
On January 22, 1998, Crean appealed the trial court's order denying her interest on the judgment and the 15% penalty fee for Michelin's failure to pay as prescribed by § 25-5-59(b) and §25-5-86. The Court of Civil Appeals held that "the dispute between [Michelin's] insurance companies as to the amount of compensation each was responsible for paying was a `good cause' reason for the delay in payment of the benefits under § 25-5-59."Crean v. Michelin North America, Inc., 782 So.2d 295,297 (Ala.Civ.App. 1999). However, the Court of Civil Appeals found that "under § 25-5-86 a `good cause' reason for delay in payment of benefits is not a defense to the failure to timely pay benefits owed." 782 So.2d at 297. The Court of Civil Appeals reversed the trial court's judgment for its failure to find the "present value" of the future installments of benefits owed by Michelin and its failure to grant "the interest owed on the judgment." 782 So.2d at 297. Michelin has not sought review of this aspect, or any aspect, of the judgment of the Court of Civil Appeals. Although the Court of Civil Appeals remanded the cause to the trial court for it to determine the present value of Crean's benefits and to include an award of statutory postjudgment interest, the Court of Civil Appeals did not instruct the trial court to award Crean the 15% penalty prescribed by § 25-5-59(b) and § 25-5-86.
Crean petitioned this Court for certiorari review, which we granted to determine whether a dispute between two compensation carriers, who are not defendants to the workers' compensation action, can constitute "good cause," as provided in § 25-5-59(b), for an employer's failure to pay court-ordered benefits timely.
Section 25-5-59(b), Ala. Code 1975, provides:
 "(b) Compensation shall begin with the fourth day after disability, and if the disability from the injury exists for a period as much as 21 days, compensation for the first three days after the injury shall be added to and payable with the first installment due the employee after the expiration of the 21 days. If any installment of compensation payable is not paid without good cause within 30 days after it becomes due, there shall be added to the unpaid installment an amount equal to 15 percent thereof, which shall be paid at the *Page 301 same time as, but in addition to, the installment. (Emphasis added.)
Section 25-5-86, Ala. Code 1975, provides:
 "(1) If the award, order, or settlement agreement is payable in installments and default has been made in the payment of an installment, the owner or interested party may, upon the expiration of 30 days from the default and upon five days' notice to the defaulting employer or defendant, move for a modification of the award or settlement agreement by ascertaining the present value of the case, including the 15 percent penalty provision of Section 25-5-59, under the rule of computation contained in Section 25-5-85, and upon which execution may issue. The defaulting employer may relieve itself of the execution by entering into a good and sufficient bond, to be approved by the judge, securing the payment of all future installments, and forthwith paying all past due installments with interest and penalty thereon since due. The bond shall be recorded upon the minutes of the court." (Emphasis added.)
Noteworthily, § 25-5-59(b) contains no requirement for five days' notice to claim the 15% penalty but does condition the penalty on the absence of good cause. Section 25-5-86 does contain the requirement of five days' notice to claim the remedy of lump-sum payment but does not condition the lump-sum remedy on the absence of good cause. Section 25-5-86 further preserves the employee's right to the penalty (conditioned on the absence of good cause) in the event that the employee establishes his or her entitlement to lump-sum payment.
Although, in its brief, Michelin says, "Contrary to the findings of the Court of Civil Appeals, the trial court did not find that Michelin was in default," (Brief, p. 7), Michelin, in other places in its brief, admits that it had been in default in paying Crean the compensation installments required by the trial court's June 12, 1997, order (finally effective on August 25, 1997, the date of denial of Crean's postjudgment motion). Michelin's admissions in its brief read:
 "[O]n October 27, 1997, the attorney for Michelin received all of the accrued benefits due Crean and notified the attorney for Crean.
". . . .
 "It was simply a matter of not knowing what to pay, not a matter of not wanting to pay.
". . . .
"In this case the delay was minimal."
(Brief, pp. 2 6.) Moreover, the Court of Civil Appeals recites in its opinion:
 "[I]t does appear from the documents that were before the court on Crean's motion that Michelin's defense for not having paid Crean's benefits when they came due was the dispute between the two insurance companies as to who owed what. . . .
 "Although the court denied Crean's motion to modify the judgment pursuant to § 25-5-86 to add the penalty, it did grant her a lump-sum settlement. Under § 25-5-86, to award a party a lump-sum settlement necessarily requires a finding that the employer is in default in paying the benefits."
782 So.2d at 297. Because Michelin has not sought review of the decision of the Court of Civil Appeals, Michelin is bound by these findings and holdings, which are not challenged by Crean either.See McMillan, Ltd. v. Warrior Drilling Eng'g Co., 512 So.2d 14
(Ala. 1987). Thus the sole issue before us is whether, as a matter of law, the dispute between the two carriers can constitute good cause. We hold that it cannot. *Page 302 
Section 25-5-59(b) provides for a 15% penalty whenever "any installment of compensation payable is not paid without good cause
within 30 days after it becomes due." (Emphasis added.) "[G]ood cause exists when there is a good faith dispute as to theemployer's liability to its employee." Stevison v. QualifiedPersonnel, Inc., 571 So.2d 1178, 1179 (Ala.Civ.App. 1990) (citing Read News Agency, Inc. v. Moman, 383 So.2d 840
(Ala.Civ.App.), cert. denied, 383 So.2d 847 (Ala. 1980) (emphasis added). In Stevison, the Court of Civil Appeals affirmed the trial court's refusal to enforce against the employer the then 10% penalty (now 15% penalty) provided in § 25-5-59(b) because the evidence showed a "good faith" dispute concerning whether the employee had reached maximum medical improvement and whether his condition still warranted workers' compensation benefits at all or only reduced benefits. 571 So.2d at 1179-80. See also Crown Textile Co. v.Dial, 507 So.2d 522 (Ala.Civ.App. 1987) (the employer had good cause for withholding the employee's workers' compensation benefits in that there was a factual dispute concerning whether the employee's injury arose out of and in the course of his employment).
The case before us is distinguishable from Stevison and Crown
in that, in this case, Michelin does not dispute either its liability for Crean's work-related injuries or the quantum of her compensation. The only dispute in this case is the allocation dispute between Michelin's two compensation carriers. The trial court settled this dispute on October 27, 1997, when it apportioned the benefits owed to Crean between the two compensation carriers. Although the trial court apportioned the benefits between the two compensation carriers, the primary liability and responsibility for the payment of the benefits awarded have lain with the defendant Michelin, against which the judgment was entered, ever since it became final. See § 25-5-51, Ala. Code 1975. Manifestly, the legislature adopted the penalty provisions of § 25-5-59(b) and all of § 25-5-86 to protect the injured employee. The dispute between the two secondarily liable insurers does not relieve the employee's need for her benefits one iota and likewise does not relieve the employer's primary liability to pay the benefits. Because Michelin is primarily responsible for satisfaction of the judgment and Michelin's liability for Crean's injuries is undisputed, Michelin's delay in paying Crean workers' compensation benefits is without good cause. Thus, the Court of Civil Appeals erred in concluding that Michelin had such "good cause" as would defeat Crean's claim to the 15% penalty.
A 15% penalty should be assessed against Michelin for its failure to pay the court-ordered benefits within 30 days following August 25, 1997. Furthermore, Crean is entitled to postjudgment interest on her workers' compensation award. Ex parte Stanton,545 So.2d 58 (Ala. 1989); and Sullivan, Long Hagerty, Inc. v.Goodwin, 658 So.2d 493 (Ala.Civ.App. 1994).
Therefore, we affirm the portion of the Court of Civil Appeals' judgment instructing the trial court to award Crean postjudgment interest on her compensation award, and we reverse the portion of the Court of Civil Appeals' judgment holding Crean not entitled to the 15% penalty. We remand the cause to the Court of Civil Appeals for that court to instruct the trial court to award Crean the 15% penalty on those installments of benefits which have accrued and shall accrue since August 25, 1997, and which have or shall become over 30 days delinquent and further to instruct the trial court to grant Crean that relief ordered by the Court of Civil Appeals for the lump-sum payment and interest. *Page 303 
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.
Hooper, C.J., and Maddox, Houston, Cook, See, Lyons, Brown, and England, JJ., concur.
[1] Although, on February 25, 1998, after the trial court's January 5, 1998, decision, Michelin alleged in a motion for instructions that it had "repeatedly tendered said sums to the Plaintiff, [but] the Plaintiff steadfastly refuse[d] to accept the sums," Michelin has included nothing whatsoever in the record to establish that Michelin alleged or proved any such tender in the earlier proceeding on the plaintiff's December 19, 1997, motion, decided by the trial court on January 5, 1998.